**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| Dereck Weatherman | ) | |
| Plaintiff | ) | CASE NO.: |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Goodleap LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT AND JURY DEMAND**

**I.  JURISDICTION**

This court has jurisdiction over the parties pursuant to 28 U.S. Code § 1332. Jurisdiction is proper because the parties are citizens of different states, with the Plaintiff being a citizen of the State of North Carolina and the Defendant being a citizen of California. Pursuant to the North Carolina Debt Collection Act and the statutory penalties applicable therein, there is more than $75,000 in controversy in this case. Therefore, jurisdiction is proper pursuant to 28 U.S.C § 1332.

**II.  PARTIES**

1.     The Plaintiff, Dereck Weatherman, (hereinafter "Plaintiff") is a citizen of Davidson County, North Carolina.

2.     Dereck Weatherman is a "consumer" pursuant to N.C. Gen. Stat. § 75–50(1) and is therefore entitled to the remedies set forth therein.

3.     The Defendant, Goodleap LLC, (hereinafter "Goodleap") is a corporation with its principal offices in a state other than North Carolina but which does business in North Carolina.

**III.**

**BACKGROUND**

1

4.     The Plaintiff incurred an alleged financial obligation to Goodleap in the form of a consumer credit loan to finance residential solar panels. This alleged financial obligation was initially incurred by and through a, now defunct, residential solar energy company, Power Home Solar LLC d/b/a Pink Energy (hereinafter "Pink Energy").

5.     The sales representative for Pink Energy initially engaged the Plaintiff online after Plaintiff saw an advertisement.

6.     The sales representative then visited the Plaintiff's home.

7.     The Plaintiff was not present during this sales visit.

8.     The Plaintiff never received or saw any form of the alleged contract.

9.     Plaintiff's wife was home caring for their two-year-old toddler and two-month-old infant.

10.     Plaintiff's wife was distracted during the sales meeting and asked the sales representative to reschedule the visit.

11.      The sales representative, despite seeing that the Plaintiff was not present, and that the Plaintiff's wife was distracted by small children, pressured the Plaintiff's wife into listening to the "one time offers" that would be withdrawn if not heard right then.

12.     The North Carolina Court of Appeals stated that "[t]he marital relationship raises no presumption that one spouse may act for the other, "and if such agency is relied upon, it must be proved." *Albertson v. Jones*, 42 N.C. App. 716, 718, 257 S.E.2d 656, 657 (1979).

13.     Indeed, "[t]he burden rests upon the [Third Party] to demonstrate [that the agent] had the authority to bind [the Principal] to [an] agreement. *Quoting Albertson v. Jones*, 42 N.C. App. 716, 718, 257 S.E.2d 656, 657 (1979). A close familial relationship standing alone does not

create a presumption that [an agent] possessed such authority. *Mills v. Majette*, 253 N.C. App. 657, 802 S.E.2d 462 (2017).

14.     During the lengthy in-person sales visit, the representative for Pink Energy told the Plaintiff's wife that if "she didn't sign up right now," then offers would be revoked.

15.     The sales representative told the Plaintiff's wife that rebates would be available up to $2,000 and offered to double the rebate to cover payments for the first year of payments.

16.     The sales representative said that the sale would be for fifty (50) solar panels and installation.

17.     The Plaintiff's wife relied upon the sales representative's statement that this was a one-time offer that would be withdrawn if she didn't sign up before he departed.

18.     The sales representative placed the Plaintiff's wife in a position where she was pressured by his "sign right now or the deal will be gone" tactics to make a decision during the duration of the sales representatives visit to preserve the alleged offer.

19.     The sales representative quoted that the solar would cost approximately $50,000 for fifty (50) panels and this offer would be revoked if not accepted immediately.

20.     Upon the suggestion of the sales representative, the contract was placed only in Plaintiff's name instead of both spouses.

21.     The sales representative, without consent of the Plaintiff, accessed the Plaintiff's credit profile through both Experian and Equifax.

22.     At no time material hereto did the Plaintiff ever have a relationship of any kind with the Sales Representative, Pink Energy, or Goodleap as defined under FCRA § 1681(b)(3)(A)-(E).

23.     The high-pressure sales representative used these tactics upon the Plaintiff's wife while there was a two-year-old toddler and two-month-old infant present in the house whom held the lion's share of her attention.

24.     At no point did the Plaintiff speak with this Pink Energy representative.

25.     Nor did the Plaintiff, at any point, sign any contract with Pink Energy concerning the solar product.

26.     The Plaintiff, who at no time interacted with the Pink Energy representative, was then encumbered with this alleged contract for this alleged solar service.

27.     Soon after, the Plaintiff's wife contacted Pink Energy and requested that Pink Energy cancel the contract because the Plaintiff did not approve of this alleged contract to which he was now allegedly obligated and was concerned about Pink Energy filing bankruptcy.

28.     Pink Energy refused to cancel the alleged contract.

29.     Pink Energy threatened that Plaintiff would be required to pay an exorbitant amount if the contract was canceled.

30.     Pink Energy threatened to sue Plaintiff if he canceled the contract.

31.     At the point that Pink Energy allegedly formed this contract with the Plaintiff, Goodleap issued consumer credit to the Plaintiff to provide financing for the alleged indebtedness upon the supposedly functional residential solar product that Pink Energy promised the consumers.

32.     16 CFR 433.2(b), known commonly as "the Holder Rule," states that "[a]ny holder of [a] consumer credit contract is subjected to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof."

33.     North Carolina law echoes 16 C.F.R. 433.2(a). *N.C.G.S.* § 25A-25(a) states that "[i]n a consumer credit sale, a buyer may assert against the seller, assignee of the seller, or other holder of the instrument or instruments of indebtedness, any claims or defenses available against the original seller, and the buyer may not waive the right to assert these claims or defenses in connection with a consumer credit sales transaction."

34.     Pursuant to both North Carolina Law and Federal Law, Goodleap, as the assignee of the alleged contract, is "subject to all claims and defenses which the [Plaintiff] could assert against" Pink Energy.

35.     After being issued consumer credit and incurring an alleged indebtedness to Goodleap, Pink Energy delivered a product to the Plaintiff that was wholly unserviceable.

36.     Pink Energy only installed ten (10) panels instead of the promised fifty (50).

37.     The solar panel installation was a catastrophic engineering failure and suffers from numerous defects, including but not limited to the following:

        (a)     The product intermittently causes the power in the Plaintiff's home to cut off; depriving the family of power and running water in their own home;

        (b) The product is improperly grounded and is a fire hazard;

        (c) The product fails to provide any power to the Plaintiff's home;

        (d) The installation of the product has caused damage to the Plaintiff's home's roof.

38.     Pink Energy refused to rectify these issues with the product and subsequently filed for Bankruptcy, retreating behind the shield of the automatic stay.

39.     Pink Energy never provided the promised rebates.

40.     Plaintiff has been paying two bills – one for the solar panels and one for utilities – for years.

41.     After filing for Bankruptcy, Pink Energy has refused to communicate with the Plaintiff.

42.     Despite being encumbered with non-functioning and dangerous solar panels, Plaintiff continued to receive bills from Goodleap for the alleged indebtedness for the defunct product.

43.     Distraught and rapidly falling into arrears upon the alleged indebtedness, the Plaintiff, along with his wife, contacted the undersigned counsel.

44.     On March 28, 2024, the undersigned counsel mailed a certified letter, return receipt requested, to Goodleap advising Goodleap that Plaintiff has retained an attorney as his representative for all alleged debts, obligations, and accounts that Plaintiff has in connection with the Defendant.

45.     The letter identified the Plaintiff by name, address, phone number, and email address.

46.     The letter informed Goodleap that Plaintiff formally and in writing revokes acceptance of the subject solar panels because they are non-functioning, dangerous, and a non-conforming good pursuant to N.C. Gen. Stat. § 25-2-602.

47.     The letter further identified the Plaintiff's attorney's name, address, and telephone number. *Exhibit 1*.

48.     The letter from the Plaintiff's attorney was delivered to the Defendant's address as registered with the North Carolina Secretary of State at 160 Mine Lake Ct. STE 200 Raleigh, NC 27615. *See below*.

## Limited Liability Company

**Legal Name**
GoodLeap, LLC
**Prev Legal Name**
Goodleap,LLC
**Prev Legal Name**
Loanpal, LLC
**Prev Legal Name**
Loanpal, LLC
**Prev Legal Name**
PARAMOUNT EQUITY MORTGAGE, LLC

## Information

**SosId:** 1267302
**Status:** Current-Active ⓘ
**Date Formed:** 7/3/2012
**Citizenship:** Foreign
**State of Incorporation:** CA
**Annual Report Due Date:** April 15th
**Annual Report Status:** Current
**Registered Agent:** CT Corporation System

## Addresses

**Reg Office**
160 Mine Lake Ct Ste 200
Raleigh, NC 27615-6417

**Reg Mailing**
160 Mine Lake Ct Ste 200
Raleigh, NC 27615-6417

49.    The letter from the Plaintiff's attorney was confirmed as delivered on April 2, 2024, and was confirmed with a certified mail green card signature. *See Below:*





50. Debt collectors are prohibited from "[c]ommunicating with a consumer (other than a statement of account used in the normal course of business) whenever the lender has been notified by the consumer's attorney that he represents said consumer." N.C. Gen. Stat. Ann. § 75-55(3).

51. After receiving this letter, Defendant Goodleap communicated directly with Plaintiff repeatedly and aggressively attempted to collect on his alleged indebtedness.

52. The Defendant, Goodleap, is a "debt collector" pursuant to N.C. Gen. Stat. § 75–50(3), as it is "any person engaging, directly or indirectly, in debt collection from a consumer."

53. Goodleap often communicated with the Plaintiff several times a day in an attempt to collect his alleged debt.

54. Since the delivery of the letter from the Plaintiff's attorney on April 2, 2024, Goodleap has communicated with Mr. Weatherman on at least, but not limited to, the following occasions by placing a telephone call to Mr. Weatherman's phone:

   a) 4/23/2024 on or about 11:26am

b) 4/23/2024 on or about 5:07pm

c) 4/24/2024 on or about 11:19am

d) 4/24/2024 on or about 1:47pm

e) 4/24/2024 on or about 4:23pm

f) 4/25/2024 on or about 9:06am

g) 4/25/2024 on or about 11:36am

h) 4/25/2024 on or about 2:46pm

i) 4/25/2024 on or about 5:52pm

j) 4/26/2024 on or about 9:04am

k) 4/26/2024 on or about 11:10am

l) 4/26/2024 on or about 1:33pm

m) 4/26/2024 on or about 3:40pm

n) 4/29/2024 on or about 9:07am

o) 4/29/2024 on or about 11:22am

p) 4/29/2024 on or about 1:43pm

q) 4/29/2024 on or about 4:06pm

r) 4/30/2024 on or about 9:06am

s) 4/30/2024 on or about 11:09am

t) 4/30/2024 on or about 1:22pm

u) 4/30/2024 on or about 3:30pm

v) 5/1/2024 on or about 9:05am

w) 5/1/2024 on or about 11:43am

x) 5/1/2024 on or about 3:35pm

y) 5/2/2024 on or about 9:04am

z) 5/2/2024 on or about 11:10pm

aa)     5/2/2024 on or about 1:34pm

bb)     5/2/2024 on or about 3:50pm

cc)     5/3/2024 on or about 9:08am

dd)     5/3/2024 on or about 12:02pm

ee)     5/3/2024 on or about 2:37pm

ff)     5/3/2024 on or about 5:46pm

gg)     5/6/2024 on or about 9:11am

hh)     5/6/2024 on or about 2:10pm

ii)     5/6/2024 on or about 2:26pm

jj)     5/6/2024 on or about 4:40pm

kk)     5/7/2024 on or about 9:06am

ll)     5/7/2024 on or about 11:13am

mm)     5/7/2024 on or about 3:25pm

nn)     5/8/2024 on or about 9:04pm

oo)     5/8/2024 on or about 11:11am

pp)     5/8/2024 on or about 1:51pm

qq)     5/8/2024 on or about 5:16pm

rr)     5/9/2024 on or about 9:07am

ss)     5/9/2024 on or about 11:56am

tt)     5/9/2024 on or about 2:01pm

uu)     5/9/2024 on or about 4:27pm

vv)    5/10/2024 on or about 9:04am

ww)    5/10/2024 on or about 1:34pm

xx)    5/10/2024 on or about 3:48pm

yy)    5/13/2024 on or about 9:04am

zz)    5/13/2024 on or about 11:08am

aaa)    5/13/2024 on or about 1:27pm

bbb)    5/13/2024 on or about 3:28pm

ccc)    5/14/2024 on or about 9:04am

ddd)    5/14/2024 on or about 11:06am

eee)    5/14/2024 on or about 3:52pm

fff)    5/15/2024 on or about 9:07am

ggg)    5/15/2024 on or about 11:58am

hhh)    5/15/2024 on or about 2:29pm

iii)    5/15/2024 on or about 7:03am

jjj)    5/16/2024 on or about 10:51am

kkk)    5/16/2024 on or about 1:23pm

lll)    5/16/2024 on or about 4:01pm

mmm)    5/16/2024 on or about 1:58pm

nnn)    5/17/2024 on or about 10:51am

ooo)    5/17/2024 on or about 1:09pm

ppp)    5/17/2024 on or about 3:20pm

qqq)    5/17/2024 on or about 6:10pm

rrr)    5/20/2024 on or about 1:57pm

sss)     5/21/2024 on or about 10:31am

ttt)     5/21/2024 on or about 12:39pm

uuu)     5/21/2024 on or about 3:27pm

vvv)     5/21/2024 on or about 5:50pm

www)     5/22/2024 on or about 10:30am

xxx)     5/22/2024 on or about 1:13pm

yyy)     5/22/2024 on or about 1:13pm

zzz)     5/22/2024 on or about 6:47pm

aaaa)    5/23/2024 on or about 12:43pm

bbbb)    5/23/2024 on or about 6:36pm

cccc)    5/23/2024 on or about 6:36pm

dddd)    5/24/2024 on or about 4:07pm

eeee)    5/28/2024 on or about 9:23am

ffff)    5/28/2024 on or about 12:27pm

gggg)    5/28/2024 on or about 3:15pm

hhhh)    5/29/2024 on or about 10:41am

iiii)    5/29/2024 on or about 12:58pm

jjjj)    5/29/2024 on or about 3:19pm

kkkk)    5/29/2024 on or about 5:50pm

llll)    5/30 on or about 12:07pm

mmmm)    5/30 on or about 2:32 pm

nnnn)    5/30 on or about 2:32 pm

oooo)    5/30 on or about 4:40 pm

pppp)     5/30 on or about 7:05 pm

qqqq)     5/31 on or about 10:43am

rrrr)     5/31 on or about 1:42 pm

ssss)     5/31 on or about 3:53 pm

tttt)     6/3 on or about 12:20 pm

uuuu)     6/3 on or about 2:45pm

vvvv)     6/3 on or about 5:29 pm

wwww)     6/3 on or about 7:47 pm

xxxx)     6/4 on or about 10:27am

yyyy)     6/4 on or about 1:22 pm

zzzz)     6/4 on or about 4:26 pm

aaaaa)     6/5 on or about 10:32 am

bbbbb)     6/5 on or about 12:51 pm

ccccc)     6/5 on or about 4:10 pm

ddddd)     6/6 on or about 12:54 pm

eeeee)     6/6 on or about 4:11 pm

fffff)     6/7 on or about 2:27 pm

ggggg)     6/10 on or about 1:13 pm

hhhhh)     6/10 on or about 4:19 pm

iiiii)     6/11 on or about 10:24am

jjjjj)     6/11 on or about 12:39 pm

kkkkk)     6/11 on or about 3:18 pm

lllll)     6/11 on or about 5:37 pm

mmmmm) 6/12 on or about 10:18 am

nnnnn)  6/12 on or about 12:42 pm

ooooo)  6/12 on or about 2:57 pm

ppppp)  6/12 on or about 6:19 pm

qqqqq)  6/13 on or about 10:41am

rrrrr)  6/13 on or about 12:43pm

sssss)  6/13 on or about 3:05 pm

ttttt)  6/13 on or about 5:28 pm

uuuuu)  6/14 on or about 10:47 am

vvvvv)  6/14 on or about 2:56 pm

wwwww) 6/14 on or about 5:12 pm

xxxxx)  6/17 on or about 3:42 pm

yyyyy)  6/17 on or about 7:30 pm

zzzzz)  6/18 on or about 1:42 pm

aaaaaa)  6/18 on or about 4:04 pm

bbbbbb)  6/19 on or about 10:29 am

cccccc)  6/19 on or about 12:54 pm

dddddd)  6/19 on or about 3:00 pm

eeeeee)  6/19 on or about 5:23 pm

ffffff)  6/20 on or about 10:40am

gggggg)  6/20 on or about 1:08 pm

hhhhhh)  6/20 on or about 2:31 pm

iiiiii)  6/20 on or about 5:08 pm

jjjjjj)   6/21 on or about 10:35 am

kkkkkk)   6/21 on or about 1:10 pm

llllll)   6/21 on or about 3:16 pm

mmmmmm)6/21 on or about 5:30 pm

nnnnnn)   6/24 on or about 1:43 pm

oooooo)   6/24 on or about 4:26 pm

pppppp)   6/25 on or about 10:29 am

qqqqqq)   6/25 on or about 12:38 pm

rrrrrr)   6/25 on or about 2:50 pm

ssssss)   6/25 on or about 5:14 pm

tttttt)   6/26 on or about 10:36 am

uuuuuu)   6/26 on or about 12:42 pm

vvvvvv)   6/26 on or about 3:05 pm

wwwwww)6/26 on or about 5:26 pm

xxxxxx)   6/27 on or about 10:37 am

yyyyyy)   6/27 on or about 1:03 pm

zzzzzz)   6/27 on or about 3:25 pm

aaaaaaa)   6/27 on or about 5:47 pm

bbbbbbb) 6/28 on or about 10:54 am

ccccccc)   6/28 on or about 1:16 pm

ddddddd) 6/28 on or about 3:18 pm

eeeeeee)   7/1 on or about 12:54 pm

fffffff)   7/1 on or about 5:51 pm

ggggggg) 7/2 on or about 10:48 am

hhhhhhh) 7/2 on or about 12:53 pm

iiiiiii) 7/2 on or about 4:49 pm

jjjjjjj) 7/3 on or about 10:30 am

kkkkkkk) 7/3 on or about 12:50 pm

lllllll) 7/3 on or about 4:58 pm

mmmmmmm)7/5 on or about 12:56 pm

nnnnnnn) 7/5 on or about 3:35 pm

ooooooo) 7/5 on or about 6:48 pm

ppppppp) 7/8 on or about 4:18 pm

qqqqqqq) 7/8 on or about 6:23 pm

55. Since the delivery of the letter from the Plaintiff's attorney on April 2, 2024, Goodleap has communicated with Mr. Weatherman on at least, but not limited to, the following occasions by placing a text message to Mr. Weatherman's phone:

a) 4/8/2024 on or about 11:24am

b) 4/9/2024 on or about 11:03am

c) 4/11/2024 on or about 11:23am

d) 4/15/2024 on or about 11:34am

e) 4/16/2024 on or about 11:23am

f) 4/17/2024 on or about 11:31am

g) 4/18/2024 on or about 11:11am

h) 4/19/2024 on or about 11:29am

i) 4/22/2024 on or about 11:28am

j) 4/23/2024 on or about 11:26am

k) 4/24/2024 on or about 11:12am

l) 4/25/2024 on or about 11:23am

m) 4/26/2024 on or about 12:28pm

n) 4/29/2024 on or about 11:37am

o) 4/30/2024 on or about 12:06pm

p) 5/1/2024 on or about 11:42am

q) 5/2/2024 on or about 11:44am

r) 5/3/2024 on or about 11:14am

s) 5/6/2024 on or about 11:31am

t) 5/7/2024 on or about 11:29am

u) 5/8/2024 on or about 11:29am

v) 5/9/2024 on or about 11:30am

w) 5/10/2024 on or about 11:06am

x) 5/13/2024 on or about 11:40am

y) 5/14/2024 on or about 11:22am

z) 5/15/2024 on or about 1:38pm

aa) 5/17/2024 on or about 11:20am

bb) 5/20/2024 on or about 11:10am

cc) 5/21/2024 on or about 11:18am

dd) 5/22/2024 on or about 11:11am

ee) 5/23/2024 on or about 11:26am

ff) 5/24/2024 on or about 11:17am

gg)     5/28/2024 on or about 11:20am

hh)     5/29/2024 on or about 11:13am

56.     Since the delivery of the letter from the Plaintiff's attorney on April 2, 2024, Goodleap has communicated with Mr. Weatherman on at least, but not limited to, the following occasions by causing a letter to be delivered to Mr. Weatherman:

a)  4/18/2024

b)  4/25/2024

c)  5/4/2024

d)  5/17/2024

57.     The communications were coming in so fast that Mr. Weatherman had difficulty taking note of all the calls.

58.     Goodleap communicated via telephone and communications such as this express information to the Plaintiff.

59.     Telephonic and other electronic communications communicate to the Plaintiff that Goodleap is trying to speak with him and, in the context of contacts from debt collectors, may communicate to Plaintiff that his lender wants to speak with him and wants him to pay his debts.

60.     The simple knowledge that a contact was placed can be oppressive or abusive.

61.     The Plaintiff felt harassed and harangued when the Goodleap collection contacts did not stop regarding this product that was not functioning. Indeed, each call reminded the Plaintiff of how the bills kept piling up, and Goodleap still demanded that the Plaintiff pay for these solar panels that were not functioning.

62.     The communications with the Plaintiff are still ongoing and are still as frequent.

63.     Upon information and belief, Defendant maintains records of each contact placed to Plaintiff by date, time called, duration of the call, the identity of Defendant's employee, and notes or codes placed upon such record by Defendant's employee.

64.     Such records will reflect that Defendant communicated with Plaintiff after Defendant received written notification that Plaintiff was represented by an attorney and was provided with the attorney's name and telephone number.

65.     This is the type of abusive collection practice that the NCDCA is trying to prevent.

66.     Goodleap engaged in unfair and deceptive acts or practices by communicating directly with Plaintiff after receiving notice that he was represented by an attorney in violation of N.C.G.S. § 75-1.1.

67.     Under N.C. Gen. Stat. Ann. § 75-56, once a debt collector violates a provision of the NCDCA, then "[t]he specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article."

68.     Goodleap's debt collection actions affect commerce.

69.     Goodleap's debt collection caused damages to Plaintiff.

70.     As a result of these actions by Defendant, Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued, and otherwise caused indignation and distress.

71.     N.C. Gen. Stat. Ann. § 75-56(b) entitles Plaintiff to "(i) any actual damage sustained by such person as a result of such failure and (ii) civil penalties the court may allow, but not less than five hundred dollars ($500.00) nor greater than four thousand dollars ($4,000) **for each violation**." (emphasis added)

72.    Each separate communication is a violation of the NCDCA and is subject to a civil penalty. *See Leto v. World Recovery Serv., LLC*, No. 3:14-CV-00489-FDW, 2015 WL 1897060, at *3 (W.D.N.C. Apr. 27, 2015) (analyzed under the analogous North Carolina Collection Agency Act).

73.    The legislature would not have intended for debt collectors who violate the statute a hundred times to receive the same penalty as those who violate the NCDCA only once.

74.    As a result of these actions by Defendant, Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued, and otherwise caused indignation and distress.

## IV. CLAIMS FOR RELIEF

## COUNT I - GOODLEAP IS A HOLDER UNDER N.C.G.S. § 25A-25(a)

56.    The Paragraphs within the complaint above are fully incorporated by reference as if set forth at length herein.

57.    Goodleap finances solar panel installations.

58.    GoodLeap financed the Plaintiff's alleged solar panel project.

59.    After the solar provider completed its installation of the solar panels at the Plaintiff's residence, Goodleap was assigned as the Lender of the Plaintiff's solar panels.

60.    When Goodleap became the Assignee on the loan for the solar panels, Goodleap assumed the contract for the solar panels between the Plaintiff and Pink Energy and, pursuant to state and federal law, is "subject to all claims and defenses which the [Plaintiff] could assert against [Pink Energy]."

61.    Goodleap is the assignee of the alleged contracts that Pink Energy has alleged to have formed with the Plaintiff, and the practice of assignment of these alleged consumer

contracts comports with the requirements for an assignment as required by N.C. Gen. Stat. § 25A-25(a).

62.     Goodleap is subject to all claims and defenses that arise under the alleged solar panel contract as the assignee of the holder of the alleged instrument of indebtedness.

63.     Goodleap is a Lender subject to claims and defenses arising from sales because the loan for the solar panels was conditioned upon the Plaintiff's alleged purchase of the solar panels from Pink Energy

64.     Goodleap, as a holder, violated the North Carolina Debt Collection Act – N.C. Gen. Stat. Ann. § 75-56.

65.     Due to a violation of North Carolina law regarding debt collection practices, Goodleap is liable for statutory penalties as alleged in Count II.

66.     The contract was formed as a result of unconscionable conduct, Count III; after a lack of meeting of the minds, Count IV; and due to intentional/reckless fraudulent misrepresentation, Count V; therefore, the Plaintiff is entitled to cancellation in whole or in part of the indebtedness pursuant to N.C. Gen. Stat §75-2, §75-55, and §75-56(b).

67.     The contract was formed as a result of unconscionable conduct, Count III; after a lack of meeting of the minds, Count IV; and due to intentional/reckless fraudulent misrepresentation, Count V; therefore, the Plaintiff is entitled to actual damages under N.C. Gen. Stat §25-2-302, §75-1.1, §75-2, §75-55, and §75-65(b).

68.     In the alternative to Counts III - V, Goodleap is liable for the breach of contract committed by Pink Energy, Count VII, and the Plaintiff is entitled to remedy as outlined in Count VIII.

69.     Due to these violations, the Plaintiff has incurred debt, damage to his home,

emotional distress, and has no reliable power source for his family home.

70.     The Plaintiff is entitled to cancel the debt allegedly owed to Goodleap and to recover actual damages and punitive damages.

### COUNT II: VIOLATIONS OF ARTICLE 2 OF THE NCDCA

71.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

72.     The Defendant has engaged in repeated violations of Article 2 of the North Carolina Debt Collection Act, including but not limited to,

      a.  Unconscionably communicating with Plaintiff by communicating with a consumer (other than a statement of account used in the normal course of business) whenever the debt collector has been notified by the consumer's attorney that he represents said consumer in violation of *N.C. Gen. Stat §75-55(3);*

      b.  Causing a telephone to ring or engaging any person in telephone conversation with such frequency as to be unreasonable or to constitute a harassment to the person under the circumstances or at times known to be times other than normal waking hours of the person in violation of *N.C. Gen. Stat. §75-52(3).*

73.     As a result of these actions by Defendant, Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued, and otherwise caused indignation and distress.

### COUNT III: UNCONSCIONABLE CONTRACT

74.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

75.     Pursuant to N.C. Gen. Stat. § 25-2-302, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract."

76.     The Plaintiff had a continuing right to rescind the alleged Financing Contract until the third business day after they received a notice in compliance with 15 U.S.C. § 1635(a) and Regulation Z, 12 C.F.R. § 226.15(b).

77.     The Plaintiff never interacted with any agent of Pink Energy.

78.     The Plaintiff's wife was the only party who interacted with any agent of Pink Energy.

79.     The Plaintiff's wife attempted to cancel the alleged contract soon after the alleged formation thereof.

80.     The Plaintiff, upon knowledge of the alleged contract, did, in no way, ratify any terms of the alleged contract.

81.     The Plaintiff attempted to cancel the alleged contract, but Pink Energy refused to cancel the alleged contract despite having no interaction with the Plaintiff concerning the formation of the alleged contract.

82.     The Plaintiff's wife was informed by the high-pressure sales representative that the alleged price of $50,000 for the fifty (50) panels was a one-time offer that would be withdrawn if the Plaintiff's wife did not sign the contract at the time when the sales representative was at the home.

83.     The Plaintiff's wife was promised that Pink Energy would provide rebates that would cover the payments for the first year of the solar panels.

84.     The sales representative delivered the misquoted initial sales price of $50,000 for

the fifty (50) panels while the Plaintiff's wife had an infant and a two-year-old toddler to look after.

85.     The Plaintiff's wife was pressured into signing a contract under the false promise that the alleged offer would be withdrawn if she did not sign at that moment.

86.     The Plaintiff's wife electronically signed the alleged contract on the sales representative's tablet device.

87.     The Plaintiff at no point assented to the terms of the alleged contract prior to his wife's alleged electronic signing.

88.     The electronic signatures on the alleged contract are invalid as a matter of law because Plaintiff, who is the only party listed on the alleged contract, never consented to electronically sign the alleged contract as required per 15 U.S.C §7001(c)(1)(C)(ii).

89.     The Plaintiff's signature cannot properly be attached to the contract because the Plaintiff's consent was not properly obtained as required pursuant to 15 U.S.C. § 7001(c)(1)(C).

90.     The high-pressure sales tactics to "purchase now," coupled with the deliberate and malicious misrepresentations as to the sales price of the solar panels and promises of monetary rebates, mean that the material terms were false, and therefore, there was no true meeting of the minds.

91.     During the sales representative's visit, the Plaintiff's wife was distracted by her small children and the sales representative should have ceased when requested; therefore, there was no meeting of the minds.

92.     The Plaintiff's wife, because of the high-pressure sales pitch and distraction by her children, had little bargaining power during this exchange with the sales representative; therefore, there was no meeting of the minds.

93.     The sales representative baited Plaintiff's wife by promising 50 solar panels would be installed.

94.     Instead, only 10 solar panels were installed.

95.     The sales representative baited Plaintiff's wife by promising that monetary rebates would be provided during this one-time offer.

96.     However, no rebates were ever provided.

97.     The Plaintiff is entitled to a cancelation of the contract and the arbitration clause therein and the financing agreement therein because (1) a contract was never formed due to a lack of a true meeting of the minds and (2) any alleged contract is invalid because the material representations as held out by the sales representative are *prima facia* unconscionable; therefore any alleged contract is invalid as a matter of law.

### COUNT IV: INADEQUATE AGREEMENT TO FORM A CONTRACT

98.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

99.     Pursuant to N.C. Gen. Stat. § 25-2-204, there was never a contract made in "any manner sufficient to show agreement" between the parties.

100.    Neither Plaintiff, nor his wife, were not quoted the accurate contract price for the solar panels during the sales negotiation.

101.    There was no agreement on the contract price during the negotiation.

102.    The Plaintiff, by virtue of not being present at the negotiation, did not have a chance to view the contract prior to being pressured to sign it.

103.    The Plaintiff, by virtue of not being present at the negotiation of the alleged contract, was not informed of a financing arrangement with GoodLeap.

104.    The Plaintiff, by virtue of not being present at the negotiation of the alleged

contract, never viewed a financing agreement with GoodLeap.

105.    The Plaintiff, by virtue of not being present at the negotiation of the alleged contract, never signed a financing agreement with GoodLeap.

106.    The Plaintiff, by virtue of not being present at the negotiation of the alleged contract, did not agree to the price that appeared on the solar contract.

107.    Both The Plaintiff and his wife attempted to cancel the contract after its alleged formation.

108.    The Plaintiff formally and in writing rejected the non-conforming goods after the solar panels were installed and the Plaintiff became aware of the true price of the panels, financing cost, and installation.

109.    The Plaintiff never agreed to the final terms of Pink Energy's contract and never agreed to the final terms of GoodLeap's offers.

### *COUNT V: INTENTIONAL/RECKLESS FRAUDULENT MISREPRESENTATION*

110.    Plaintiff incorporates the previous paragraphs as if fully set forth herein.

111.    The Pink Energy Sales Representative conducted himself in accordance with Pink Energy's standards for door-to-door sales.

112.    The Sales Representative represented to the Plaintiff's wife that she was agreeing to a much lower price than she actually was.

113.    The Sales Representative knew that the Plaintiff was not present.

114.    The Sales Representative knew that the Plaintiff was unable to see what he was inducing the Plaintiff's wife into signing.

115.    The Sales Representative knew that the Plaintiff's wife relied on the Salesperson to explain the terms of the contract.

116.    The Plaintiff's wife was not given an opportunity to read the sales agreement before being told to affix a digital signature or lose out on one-time-only offer.

117.    Upon knowledge and belief, the Sales Representative had a strict sales quota to meet and was therefore motivated to make as many sales as possible.

118.    The Sales Representative intended to make the sale to the Plaintiff but never spoke to the Plaintiff, nor inquired as to whether or not the Plaintiff's wife had any authority to contract on behalf of the Plaintiff.

119.    The Sales Representative misrepresented the price of the solar panels in order to finalize the sale.

120.    The Sales Representative misrepresented that the offer would be revoked unless the Plaintiff's wife signed the agreement that day.

121.    The Sales Representative misrepresented that his company would pay monetary rebates if the Plaintiff's wife signed the agreement that day.

122.    The Plaintiff's wife reasonably relied on the false statement made by the Salesperson.

123.    The alleged contract took place in the stream of commerce and did therefore affect commerce.

124.    Pink Energy, by and through the Sales Representative, falsely represented that it had capable and knowledgeable professionals who could complete the installation of the solar panels to the standard of a reasonably prudent solar energy company.

125.    Pink Energy, by and through the Sales Representative, knew that this representation was false. This is indisputable because of all the complaints that Pink Energy

received about previous installations.[1]

126.    Pink Energy, by and through the Sales Representative, intended to deceive consumer by promising to properly install a working solar panel system when it knew it was not capable of doing so.

127.    The Plaintiff's wife reasonably relied on these statements when she trusted Pink Energy, by and through the Sales Representative, to install working solar panels as promised.

128.    The solar panels never worked and, in fact, are a fire hazard and cause interference with the Plaintiff's power supply to their home.

129.    Goodleap is liable for the acts of Pink Energy and its agents because Goodleap is a holder as previously discussed and pursuant to both North Carolina law and Federal Law.

130.    The Plaintiff is entitled to cancellation of the loan for the solar panels.

131.    The Plaintiff is entitled to actual and punitive damages.

### *COUNT VI: VIOLATION OF TRUTH IN LENDING ACT*

132.    Plaintiff incorporates the previous paragraphs as if fully set forth herein.

133.    GoodLeap violated the Truth in Lending Act by failing to deliver all "material" disclosures required by the Truth in Lending Act, including, but not limited to the following,

      a.    by failing to timely and/or accurately disclose the "finance charge," in violation of 15 U.S.C. § 1638(a)(3), and Regulation Z, 12 C.F.R. § 226.18(d) and 226.4;

      b.    by failing to timely and/or accurately disclose the "amount financed" in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. § 226.18(b); and

---

[1] Attorney General Josh Stein Calls On Five Solar Lending Companies to Suspend Loan Payments and Interest for Pink Energy Customers. *See:* https://ncdoj.gov/attorney-general-josh-stein-calls-on-five-solar-lending-companies-to-suspend-loan-payments-and-interest-for-pink-energy-customers/

c. by failing to timely and/or accurately disclose the "payment schedule," in violation of 15 U.S.C. § 1638(a)(6) and Regulation Z, 12 C.F.R. § 226.18(g).

134. GoodLeap violated the Truth in Lending Act by failing to provide the disclosures required under 15 U.S.C. § 1638 before the credit was extended.

135. Goodleap's TILA disclosure did not include descriptive explanations of the terms "amount financed", "finance charge", "annual percentage rate", "total of payments", and "total sale price" as specified by the Bureau.

136. The Plaintiff had a continuing right to rescind the Financing Contract until the third business day after they received a notice in compliance with 15 U.S.C. § 1635(a) and Regulation Z, 12 C.F.R. § 226.15(b). The Plaintiff did not receive a Truth in Lending Act disclosures regarding the finance charge, the amount financed, and the payment schedule until after the panels were installed.

## *COUNT VII: BREACH OF CONTRACT AS A CONTRACT DEFENSE*

137. Plaintiff incorporates the previous paragraphs as if fully set forth herein.

138. The contract should be invalidated based on violation of consumer protection laws, lack of meeting of the minds, fraud, and/or unconscionability (Counts II-VI).

139. In the alternative, the Plaintiff should be allowed to return to the condition and state he was in before ever entering the contract due to the solar provider's breach of contract.

140. The solar provider had a contractual duty to provide working solar panels, a working solar panel system, and proper installation.

141. The solar provider breached its contract when it installed faulty solar panels.

142. The solar panels installed never worked.

143. The solar panels never worked because they were faulty.

144. The solar panels never worked because the battery was faulty.

145.     The solar panels never worked because installation was improper.

146.     The solar panels never worked because the install-team was not qualified to install solar panels.

147.     The solar panels never worked because the install-team was not adequately supervised or vetted.

148.     As a result of the faulty and negligent installation, the Plaintiff's home intermittently loses power and the panels are a fire hazard.

149.     The Plaintiff did not owe money for a service and product he never received.

150.     As a direct result of GoodLeap attempting to collect on a loan before services and products were rendered, the Plaintiff suffered emotional distress, mental distress, aggravation, anxiety, annoyance, and inconvenience.

### COUNT VIII: REVOCATION OF ACCEPTANCE OF NON-CONFORMING GOODS

151.     Plaintiff incorporates the previous paragraphs as if fully set forth herein.

152.     Nonconformities in the solar panels substantially impaired their value to the Plaintiff, who did not know of these nonconformities or undisclosed damage before purchase and was misled by Pink Energy as to the useability of the system.

153.     The Plaintiff formally and in writing revoked acceptance of the solar panel system and is prepared to tender delivery of the solar panel system in accordance with his right pursuant to pursuant to N.C. Gen. Stat. § 25-2-602.

154.     Goodleap, as a holder, must honor the Plaintiff's revocation of acceptance or be in violation of N.C. Gen. Stat. § 25-2-602.

155.     Furthermore, Goodleap, as a holder, must cancel any/all alleged contracts between Pink Energy and the Plaintiff and must cease collections upon any alleged indebtedness. This includes but is not limited to any and all underwriting provisions and/or finance agreements with Pink Energy's financier Goodleap LLC pursuant to N.C. Gen. Stat. § 25A-39.

## COUNT IX: VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA)

156.    Plaintiff incorporates the previous paragraphs as if fully set forth herein.

157.    Goodleap and Pink Energy were required, pursuant to FCRA §§ 1681q, 1681n and 1681o, to refrain from obtaining consumer reports from credit reporting agencies under false pretenses and without permissible purpose.

158.    Plaintiff never knowingly gave written instructions to Goodleap, Pink Energy, nor the Sales Representative nor any issuers of consumer credit to obtain and/or release to a third party a consumer report of which Plaintiff was the subject; nor have to Goodleap, Pink Energy, nor the Sales Representative ever been ordered by a court of competent jurisdiction to issue a consumer report pursuant to FCRA § 1681b(1).

159.    Issuers of consumer credit have an affirmative duty to follow reasonable procedures, including those that would prevent the impermissible accessing of consumer reports.

160.    Upon information and belief, Pink Energy trained its agents to close sales by any means necessary including but not limited to illegal and surreptitious acquisition of Plaintiff's credit reports derived from an interest and priority well beyond the scope of the FCRA.

161.    Goodleap, as a holder in due course of Pink Energy, willfully and/or negligently violated the provisions of the FCRA in the following respects,

        a)      using or obtaining a consumer report without a purpose authorized by the FCRA in violation of 15 U.S.C. § 1681b(f);

        b)      falsely, purposely, surreptitiously and maliciously obtained the Plaintiff's credit reports in violation of FCRA § 1681q; and

        c)      falsely, purposely, surreptitiously and maliciously obtained the Plaintiff's credit reports in violation of FCRA § 1681n and 1681o.

162.     As a result of the Defendants' actions, Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an order granting the following relief against the Defendant:

A.     A finding for the Plaintiff in regards to Counts I-VI; or, in the alternative, a finding for the Plaintiff in regards to Counts I, VII and VIII;

B.      Nullification of the solar panel contract, including the arbitration agreement contained therein;

C.     Nullification of any financing agreement stemming from the solar panel contract;

D.     Cancellation of the loan for the solar panels;

E.     A finding that the acts of Defendants were in violation of the North Carolina Consumer Protection Act;

F.     Maximum permissible statutory penalties against Defendants pursuant to N.C. Gen. Stat. Ann. § 75-55, for each violation of the North Carolina Consumer Protection Act, and reasonable attorneys' fees and costs;

G.     Sanctions upon Defendants;

H.     Damages in an amount that fairly and reasonably compensates Plaintiff for the emotional and mental distress, loss of time, aggravation, anxiety, annoyance and inconvenience suffered as a result of Defendants' unlawful acts;

I.     Actual damages, including but not limited to, the cost of repairing the

Plaintiff's home, any structural damage to the same; any damage to the Plaintiff's electrical system; and court costs and attorney's fees;

J. Incidental damages;

K. Consequential and incidental damages;

L. Punitive damages;

M. Prejudgment and post judgment interest on all applicable damages;

N. Any such additional relief as this Court deems just, appropriate, necessary, and/or proper.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

**DERECK WEATHERMAN**,
By Counsel

By:

/s/ Benjamin M. Sheridan
Benjamin M. Sheridan (#52734)
Jed R. Nolan (#56899)
Peter M. Carlton (#60800)

*Counsel for Plaintiff*
Klein & Sheridan, LC PC
964 High House Rd PMB 2039
Cary, NC 27513

Phone: (919) 899-9533
Fax: (919) 899-9533

ben@kleinsheridan.com
jed@kleinsheridan.com
peter@kleinsheridan.com